Certainly, Father has taken the proper steps to straighten out his life for the benefit of the children. I concur with the majority writing that the trial court's Findings of Fact were clearly erroneous and termination of Father's parental rights was not the least restrictive alternative. Matter of C.L.,397 N.W.2d 81 (S.D. 1986).
Nevertheless, I am compelled to write because the majority writing attaches most of its decisional authority to Matter ofZ.Z., 494 N.W.2d 608 (S.D. 1992), a termination of parental rights case which sorely aggrieved the cause of justice. See my dissent therein which was not noted in the majority opinion. The dissent, spiked with authorities, condemning the breakup of families, spawned further proceedings in the Seventh Judicial Circuit of the State of South Dakota, from whence the case did begin and of which I take judicial notice. SDCL 19-10-2. In proceedings supplementary to the decisions of the Supreme Court, involving a battery of social experts in the DSS, lawyers, and reports, the child, Z.Z., remained in the physical custody of grandpa and grandma. A home study was generated through the personal request of Judge Konenkamp, a circuit court judge for the Seventh Judicial Circuit. Ultimately, a stipulation was entered into by the aforesaid lawyers and Department of Social Services, wherein and whereby this little boy was permanently placed with grandpa and grandma for "long-term permanent care" with the DSS to ". . . monitor . . . Z.Z.'s health and welfare." Court Order was entered on April 5, 1993, in Fall River County, situs of the family. As far as this writer is concerned, the beat of the Z.Z. decision by the majority of the Court would appear to go on, via this opinion. However, by the voice of dissent, the drums were muffled. Little Z.Z. remained within the family circle. Notwithstanding the text of the special concurrence of Justice Amundson, records in the *Page 87 
Seventh Judicial Circuit post Z.Z. decision in the South Dakota Supreme Court, reveal that the judicial branch of government is still actively involved in this case and that the mother of little Z.Z. does have social contact with him.
In light of the polar positions taken on Z.Z., I decline to support its use.** Rather, I base my support of this opinion on the landmark decision of Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), as well as People in theInterest of S.M.M., 349 N.W.2d 63 (S.D. 1984); Matter of S.H.,337 N.W.2d 179 (S.D. 1983) and Matter of B.E., 287 N.W.2d 91
(S.D. 1979).
** It is — I would — that the reader not only read, but also that he understand.